UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERUNDA LYNN FOX,                          Case No. 18-10901

     Plaintiff,                            Laurie J. Michelson
v.                                          United States District Judge

U.S. POSTAL SERVICE &                       Stephanie Dawkins Davis
UNNAMED POSTAL                              United States Magistrate Judge
EMPLOYEES,

     Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (Dkt. 11) AND PLAINTIFF'S VARIOUS MOTIONS (Dkts. 12, 13, 14)

## I.    PROCEDURAL HISTORY

Plaintiff brought this action *pro se* alleging violation of various federal statutes and the United States and Michigan Constitutions. (Dkt. 1). District Judge Laurie J. Michelson referred all pretrial matters to the undersigned on April 20, 2018. (Dkt. 10). On May 21, 2018, defendants filed their motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. 11). Plaintiff responded (Dkt. 17) and defendants replied (Dkt. 21). On the same day plaintiff filed her motions for judgment on the pleadings (Dkt. 12), for summary judgment (Dkt. 13), and for default judgment (Dkt. 14). Defendants responded.

For the reasons stated below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**, that plaintiff's complaint be **DISMISSED**, and that plaintiff's motions be **DENIED**.

## II.   PLAINTIFF'S COMPLAINT

Plaintiff sues the United States Postal Service and 20 unnamed postal employees claiming violations of the Civil Rights Act of 1866, the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Racketeer Influenced and Corrupt Organizations Act (RICO), Article II, Section 1 of the United States Constitution and the Thirteenth and Fourteenth Amendments thereto, as well as the Michigan Constitution.

Plaintiff claims that her former in-laws used their positions at the U.S. Postal Service (USPS) to have employees burn her identity, commit immigration and visa fraud, embezzlement, wire fraud, obstruct justice, commit bank fraud, credit card fraud, mortgage fraud, interfere with commerce, mail theft, pension and welfare fraud, arson, and genocide.  (Dkt. 1, at Pg ID 6).

Plaintiff alleges that on January 8, 2018, a USPS manager gave her a piece of fraudulent mail and told her that the mail carriers would not deliver to her house because of her dogs.  Plaintiff suspects that, because of this fraudulent mail (an unspecified reason), USPS was engaged in a cover-up, and that her dogs are not

the reason USPS stopped delivering her mail.  (*Id*.).  Her mail was suspended on February 19, 2018.

According to plaintiff, in 2016 four Royal Oak postal employees and managers were involved in the destruction of ballot certification material for the United States Presidential race.  Plaintiff complained to usps.gov and an investigator and other employees went to her house and threatened her "regarding a [sic] act involving murder in violation of 18 U.S.C. 96 [sic] § 1961."  Plaintiff contends that the inspector threatened her, violating her civil rights to vote and become a candidate; and violated the United States and Michigan Constitutions.  (*Id.* at Pg ID 7).

Plaintiff alleges that when the carrier would deliver mail the carrier would tell plaintiff that she smelled, that her house smelled, or that "Bleach don't help."  Plaintiff contends that these statements violated her ADA rights, although she does not name her disability.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

#### 1.   Rule 12(b)(1)

As explained in *McQueary v. Colvin*, 2017 WL 63034, at \*3 (W.D. Ky. Jan. 5, 2017), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual

existence of subject matter jurisdiction (factual attack)" *Cartwright v. Garner*, 751

F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598

(6th Cir. 1994)).  "A facial attack is a challenge to the sufficiency of the pleading

itself.  On such a motion, the court must take the material allegations of the petition

as true and construed in the light most favorable to the nonmoving party."

*McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d

at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a

basis for subject matter jurisdiction, and the Court takes the allegations of the

complaint as true for purposes of the Rule 12(b)(1) analysis").  "A factual attack,

on the other hand, is not a challenge to the sufficiency of the pleading's

allegations, but a challenge to the factual existence of subject matter jurisdiction."

*McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598).  Defendants seek dismissal for

lack of jurisdiction under the Federal Tort Claims Act (FTCA) for plaintiff's

claims regarding the reinstatement of her mail and negligent transmittal of mail.

     2.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Association

of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks

omitted)).  In *Iqbal*, the Supreme Court explained that a civil complaint only

survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And,

while a complaint need not contain "detailed" factual allegations, its "[f]actual

allegations must be enough to raise a right to relief above the speculative level on

the assumption that all the allegations in the complaint are true." *Id.* (quoting

*Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also

League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.

2007) (emphasis in original) (the factual allegations in a complaint need not be

detailed but they "must do more than create speculation or suspicion of a legally

cognizable cause of action; they must show *entitlement* to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

In ruling on defendant's motion under Rule 12(b)(6), the Court may consider the pleadings of the parties, including copies of any written instrument(s) attached to a pleading as their attachment thereto renders them a part of the pleading under Fed.R.Civ. P. 10(c).  *See also Commercial Money Center, Inc. v. Illinois Union Ins. Co*., 508 F.3d 326, 335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted to motion for summary judgment by court's consideration of documents that were not attached to counterclaim, but were attached to the complaint and the answer to counterclaim).  The undersigned also recognizes that generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56.

However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the
Complaint and any exhibits attached thereto, public records, items appearing in the
record of the case and exhibits attached to defendant's motion to dismiss so long as
they are referred to in the Complaint and are central to the claims contained
therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008);
*see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the
Sixth Circuit has "held that 'documents that a defendant attaches to a motion to
dismiss are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v. Zenith
Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  "[I]n general, a court may
only take judicial notice of a public record whose existence or contents prove facts
whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123
Fed. Appx. 694, 697 (6th Cir. 2005).

    B.   <u>Discussion</u>

    The undersigned begins by addressing plaintiff's argument that defendants
did not timely respond to her complaint.  Plaintiff raises this argument in her
motion for judgment on the pleadings (Dkt. 12), motion for summary judgment
(Dkt. 13), and motion for default judgment (Dkt. 14).  She asserts that the
defendants were served with the complaint by First Class mail on March 19, 2018,
but did not file their response within 60 days of service.  (Dkt. 12, Pg ID 48; Dkt.

13, Pg ID 50; Dkt. 14, Pg ID 51).  The entirety of her summary judgment and default judgment arguments rest on the defendants' alleged untimely response.

Plaintiff filed certificates of service with the Court on March 19, 2018, showing that she mailed by certified mail the summons and complaint to the U.S. Attorney General, the U.S. Postal Service Postmaster General Headquarters, and the U.S. Attorney for the Eastern District of Michigan on March 19.  (Dkts. 4, 5, 6).  Plaintiff also states that she personally delivered a copy of the summons and complaint to the Office of the United States Attorney for the Eastern District of Michigan.  (Dkt. Dkt. 17, Pg ID 68).  The United States Attorney received the mailed copy on March 27, 2018, and the Postmaster General received the mailed copy on March 26.  (Dkt. 16, Exhibits B and C).

Plaintiff's attempt at personal service is not in accordance with Federal Rule of Civil Procedure 4(c)(2), which provides that a person who is at least 18 years old and *not a party* may serve the summons and complaint.  Because plaintiff is a party in this matter, her attempt at personal service was improper under the rules. Regarding the mailed service, plaintiff mistakenly counts defendants' time to respond from the day the documents were mailed.  However, the time does not being to run until the documents are served. Fed. R. Civ. P. 12(a)(2) ("The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or

crossclaim *within 60 days after service* on the United States attorney.") (emphasis

added).  Defendants have demonstrated that they were served on March 26 and 27,

2018.  When computing the time to respond, if the time period is stated in days, a

party "excludes the day of the event that triggers the period."  Fed. R. Civ. P.

6(a)(1)(A).  If taking the earliest service date, March 26, the time to respond began

to run March 27.  Sixty days from March 27 is May 26, 2018, which a Saturday.

Under Fed. R. Civ. P. 6(a)(1)(C), if the last day is a Saturday the period continues

to run until the next day that is not a weekend day or legal holiday.  The next day

was Monday, May 28.  Defendants filed the motion to dismiss on May 21, within

the 60-day period.  Therefore, the undersigned recommends denying plaintiff's

motions for judgment on the pleadings, summary judgment and default judgment.[1]

### 1.    Subject Matter Jurisdiction

Defendants bring the motion to dismiss under Fed. R. Civ. P. 12(b)(1) and

12(b)(6).  Defendants seek dismissal of the complaint under 12(b)(1) for plaintiff's

claims which implicate sovereign immunity.  Defendants seek sovereign immunity

---

[1] In addition, plaintiff's motion for default judgment should be denied for the reason that no default has been entered by the Clerk of the Court.  "In order to obtain a default judgment against a party who has received service but failed to appear or plead in a case, the plaintiff must first seek an entry of default from the Clerk of the Court under Rule 55(a)."  *Corsetti v. Hackel*, 2011 WL 2135184, *1 (E.D. Mich. 2011), citing 10A Charles A. Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 2682 ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").  Here, no default has entered and thus, the motion for entry of default judgment should be denied.

for plaintiff's tort claims relating to the suspension of mail delivery and the handling of her mail.

### a.    Suspension of Plaintiff's Mail

Defendants do not dispute that the USPS suspended mail delivery to plaintiff's home in late 2017 because of her dogs.  (Dkt. 11, at p. 9).  However, defendants contend that the decision to suspend her mail is the kind of discretionary decision that removes the court's jurisdiction to review the decision under the Federal Tort Claims Act (FTCA).  (*Id.* at p. 9-10); 28 U.S.C. § 1346.  To the extent she is claiming error in the USPS's suspension of her mail due to her dogs, the Court lacks jurisdiction for such a claim.

Sovereign immunity generally bars claims against the United States without its consent. *See Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (citing *United States v. Orleans,* 425 U.S. 807, 814 (1976)). The USPS enjoys sovereign immunity absent a waiver, and the FTCA applies to tort claims arising out of the activities of USPS.  *Dolan v. United States Postal Service*, 546 U.S. 481, 483-84 (2006).  Congress, through the FTCA, waived this governmental immunity for claims brought

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

> liable to the claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  There are exceptions to the waiver of immunity.  One

such exception is the discretionary function exception.  The FTCA's waiver does

not apply to "[a]ny claim ... based upon the exercise or performance or the failure

to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved

be abused."  *Id.* § 2680(a).  "If a claim falls within this exception, then federal

courts lack subject-matter jurisdiction, and the claim must be dismissed."  *Kohl v.

United States*, 699 F.3d 935, 940 (6th Cir. 2012) (citing *Feyers v. United

States,* 749 F.2d 1222, 1225 (6th Cir. 1984)).

Through a series of cases, the Supreme Court developed a two-part test to

determine if a claim falls within this exception.  *Rosebush v. United States*, 119

F.3d 438, 441 (6th Cir. 1997).  The test requires that a court first determine

"whether the challenged act or omission violated a mandatory regulation or policy

that allowed no judgment or choice."  *Id.*  Such determination would be found if "a

federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow.  In this event, the employee has no rightful option but to

adhere to the directive."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  If,

on the other hand, there was room for judgment or choice in the decision made,

then the challenged conduct was discretionary.  *See Rosebush,* 119 F.3d at 441.  In

11

such a case, the second step requires a court to determine whether the conduct is

"of the kind that the discretionary function exception was designed to shield." *Id*.

(quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)).  If the judgment

used by the official involved "consideration of social, economic, or political

policy, the exception applies."  *In re Glacier Bay*, 71 F.3d 1447, 1450 (9th Cir.

1995).

The relevant USPS regulation is found at section 623.3. of the Postal

Operations Manual (POM), entitled "Withdrawal of Delivery Service: Safety or

Security."  That section provides,

> Delivery service may be suspended when there is an
> immediate threat (including, but not limited to, threats
> due to loose animals) to the delivery employee, mail
> security, or postal property. Suspension of service should
> be limited to an area necessary to avoid the immediate
> threat.  Postmasters should request corrective action from
> responsible parties and restore normal service as soon as
> appropriate.

United States Postal Service, Postal Operations Manual, Issue 9, § 623.3 (2002);

*see Curiale v. Potter*, 147 Fed. Appx. 743, 744-45 (10th Cir. 2005) (citing the

same POM section).  This regulation is discretionary, not mandatory; it permits but

does not mandate that delivery service be suspended in unsafe conditions.  The

undersigned must then consider whether the decision involved some policy

consideration.  *See In re Glacier Bay*, 71 F.3d at 1450.  In answering this question

the Sixth Circuit stated,

> Although difficult to draw, there is a line between
> conduct "of the kind that the discretionary function
> exception was designed to shield," *Berkovitz,* 486 U.S. at
> 536, 108 S.Ct. 1954, and the sorts of run-of-the-mill
> torts, which, while tangentially related to some
> government program, are not sufficiently "grounded in
> regulatory policy" so as to be shielded from
> liability.  *Gaubert,* 499 U.S. at 325 n. 7, 111 S.Ct.
> 1267; *see also Totten v. United States,* 806 F.2d 698, 700
> (6th Cir.1986) (explaining that Congress, in the
> discretionary-function exception, "was drawing a
> distinction between torts committed in the course of such
> routine activities as the operation of a motor vehicle and
> those associated with activities of a more obviously
> governmental nature").  Where an act "cannot be said to
> be based on the purposes that the regulatory regime seeks
> to accomplish," the discretionary-function exception will
> not apply.  *Gaubert,* 499 U.S. at 325 n. 7, 111 S.Ct.
> 1267.  The *Gaubert* Court used negligent driving by a
> government actor on government business as an example
> of conduct that would not be shielded by the
> discretionary-function exception.  *Id.*  Driving a car,
> while it "requires the constant exercise of discretion," is
> not sufficiently connected to regulatory policy to fall
> within the discretionary-function exception.  *Id.*

*Kohl*, 699 F.3d at 943.  Further, "[w]e also consider the fact that '[w]hen

established governmental policy, as expressed or implied by statute, regulation, or

agency guidelines, allows a Government agent to exercise discretion, it must be

presumed that the agent's acts are grounded in policy when exercising that

discretion.'"  *Kohl*, 699 F.3d at 940 (quoting *Sharp ex rel. Estate of Sharp v.*

*United States,* 401 F.3d 440, 443 (6th Cir.2005)).  If the decision is susceptible to policy considerations, the discretionary function exception applies.  *See Rosebush*, 119 F.3d at 444 (explaining that even if there is no indication "that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis").

The undersigned suggests that the decision to stop delivery due to plaintiff's dogs is a decision susceptible to policy considerations.  As stated in *Kohl*, when the regulation allows an agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  699 F.3d at 940 (quoting *Sharp ex rel. Estate of Sharp v. United States,* 401 F.3d 440, 443 (6th Cir. 2005)).  The USPS's decision to stop delivery appears to be based entirely on the purpose of the USPS regulation: to protect the safety of mail carriers.  Plaintiff's conclusory assertions that the USPS did not stop delivery because of her dogs and that she "suspects a cover-up" are unsupported by factual development and do not alter the undersigned's determination that suspending delivery is a discretionary function under the FTCA.

Because both elements of the discretionary function exception are satisfied, the Court does not have jurisdiction to review the decision to stop delivery.  Accordingly, the claim should be dismissed.

b.      Ballot Certification Material Claim

Plaintiff claims that USPS personnel were involved in the destruction of

ballot certification material.  While not entirely clear, it appears that this claim is

about the handling of her mail.  This Court does not have jurisdiction to review this

claim under the FTCA.  Section 2680(b) states that "The provisions of this chapter

and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of the

loss, miscarriage, or negligent transmission of letters or postal matter."  The

Supreme Court explained this exception, stating: "[w]e think it more likely that

Congress intended to retain immunity, as a general rule, only for injuries arising,

directly or consequentially, because mail either fails to arrive at all or arrives late,

in damaged condition, or at the wrong address." *Dolan v. United States Postal

Service,* 546 U.S. 481, 488 (2006).  This exception to the FTCA's waiver of

immunity also applies to claims of *intentional* loss, delay, or theft of mail.

*See Levasseur v. United States,* 543 F.3d 23 (1st Cir. 2008) (holding that the theft

or concealment of mail falls within the exception of § 2680(b)); *Moreland v. U.S.

Post Office Gen.*, 2015 WL 2372322, at *3 (E.D. Mich. May 18, 2015) (Borman,

J.).  Whether plaintiff's claim about the handling of her mail is a claim of negligent

loss or destruction or intentional loss or destruction, the Court does not have

jurisdiction to entertain the claim and the claim should be dismissed.

3.     Failure to State a Claim

Defendants seek dismissal of plaintiff's remaining claims under Fed. R. Civ.

P. 12(b)(6) for failure to state a claim.

a.     RICO

Plaintiff attempts to plead a civil RICO claim against USPS.  She states that

after submitting a complaint to usps.gov about destruction of ballot material, an

inspector and other employees went to her house and threatened her in violation of

18 U.S.C. § 1961(5).  (Dkt. 1, Pg ID 7).  She also states that these employees were

involved in a cover-up "evidencing a pattern of at least 2 racketeering activities."

 Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for

"[a]ny person injured in his business or property by reason of a violation of [18

U.S.C. §] 1962."  To establish a violation of § 1962, a plaintiff must show: "(1)

that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3)

that there was a nexus between the pattern of racketeering activity and the

enterprise; and (4) that an injury to business or property occurred as a result of the

above three factors."  *VanDenBroeck v. Common Point Mortg. Co.*, 210 F.3d 696,

699 (6th Cir.2001), *abrogated on other grounds by Bridge v. Phoenix Bond &*

*Indem. Co.,* 553 U.S. 639 (2008).  A "pattern of racketeering activity" requires at

least two acts of "racketeering activity" which are set forth in Section 1961(1). 18

U.S.C. § 1961(5).

16

Plaintiff's complaint is insufficient to state a RICO claim.  Her conclusory statements that USPS employees engaged in racketeering activity are insufficient to plead the claim.  "A civil Rico action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be indictable.  Thus, the plaintiff must prove each prong of the predicate offense, or 'racketeering activity,' to maintain a civil action under the RICO statute."  *Cent. Distribs. of Beer, Inc. v. Conn,* 5 F.3d. 181, 183–84 (6th Cir.1993) (internal citations omitted), *vacated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008); *see also Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 494 (6th Cir. 1990) (holding that certain of plaintiffs' RICO claims failed because they did not plead the basic elements of the alleged predicate acts of mail fraud with sufficient particularity).  Plaintiff alleges that she was threatened and "they've also used the name game to hire employees to commit RICO violations against" her.  She did not plead the basic elements of any crime, and it is unclear what crimes she is alleging to constitute the two predicate offenses.  (Dkt. 1, Pg ID 7).  For this reason, plaintiff has failed to state a claim for relief under RICO.

Additionally, there are no allegations of an enterprise.  To establish the existence of an "enterprise" plaintiff must show (1) that a group of persons formed "an ongoing organization with a framework or superstructure for making and

carrying decisions;" (2) that they functioned as a continuing unit; and (3) that the organization "was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga v. Benistar 419 Plan Servs.*, *Inc.,* 694 F.3d 783, 793 (6th Cir. 2012) (citation omitted). Plaintiff made no such showing. Plaintiff also did not allege what injury she suffered due to the defendants' alleged RICO violations. She mentions that the defendants violated her rights to vote and become a candidate but does not allege that she was prevented from voting or becoming a candidate. Due to the deficiencies in the complaint, plaintiff fails to state a claim under RICO. *See Dey El ex rel. Ellis v. First Tennessee Bank*, 2013 WL 6092849, at *9 (W.D. Tenn. Nov. 18, 2013) (Holding that plaintiff failed to state a RICO claim where complaint contained no allegations of an enterprise or two or more predicate offenses).

To the extent plaintiff raises a RICO conspiracy claim, she did not sufficiently state a claim for relief. Section 1962(d) prohibits conspiracy to violate the section's other substantive provisions. Specifically, the statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito,* 723

F.2d 1250, 1260 (6th Cir.1983).  As demonstrated above, plaintiff has not

successfully alleged all the elements of a RICO violation.  Further, plaintiff did not

allege the existence of an illicit agreement to violate the substantive RICO

provisions.  Therefore, this claim also fails.

b.    ADA

Plaintiff states that a USPS employee would make comments that she

smelled or her house smelled while delivering mail.  According to plaintiff, these

comments violated the ADA.  (Dkt. 1, Pg ID 7).  She does not state which title of

the ADA she believes was violated.  Nor does she allege a disability.  Title I of the

ADA "prohibits certain employers, including the States, from 'discriminat[ing]

against a qualified individual with a disability because of the disability of such

individual in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment.'"  *Bd. of Trustees of Univ. of Alabama

v. Garrett*, 531 U.S. 356, 361 (2001) (citing §§ 12112(a), 12111(2), (5), (7)).

Because plaintiff did not allege any facts regarding an employment relationship

with the USPS, she does not have a Title I claim against the USPS.  *White v.

Stephens*, 2014 WL 4925867, at *6 (W.D. Tenn. Sept. 30, 2014) ("As Mrs. White

has not raised ADA claims in the context of employment, Title I does not

apply.).

Title II does not apply to the federal government.  42 U.S.C. § 12131(1)(B); *Collazo v. Corr. Corp. of Am.,* No. 4:11CV1424, 2011 WL 6012425, at *3 (N.D. Ohio Nov. 30, 2011) (citing *Cellular Phone Task Force v. F.C.C.,* 217 F.3d 72, 73 (2d Cir. 2000)) ("Title II of the ADA is applicable only to state and local governments, not the federal government."); *White*, 2014 WL 4925867, at *6.  The same is true for Title III, as that title governs "place[s] of public accommodation," which are defined as facilities operated by "private entities," not the federal government.  42 U.S.C. § 12181(7); *see also Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995) ("Public school grounds and public parks are of course operated by public entities, and thus cannot constitute public accommodations under [T]itle III."); *Agee v. United States*, 72 Fed. Cl. 284, 289 (Fed. Cl. 2006) ("[U]nder Title III, the Federal Government is not a private entity operating a public accommodation or service.  Therefore, Congress has not waived the Federal Government's sovereign immunity with regard to ADA claims." (citation omitted)); *White*, 2014 WL 4925867, at *6.  Accordingly, to the extent plaintiff raises a claim under either Title II or Title III, the claim fails.[2]

---

[2] Even if plaintiff could bring such claims against the USPS, she has failed to state a claim.  Plaintiff is required to establish that she is a qualified person with a disability under the statute, among other things.  *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  Plaintiff alleged no facts establishing that she is a qualified person with a disability.  (Dkt. 1, Pg ID 7).

c.      Civil Rights and Constitutional Claims

Plaintiff lists claims pursuant to unspecified provisions of the Civil Rights

Acts of 1866 and 1964, the Thirteenth and Fourteenth Amendments, and Article II,

Section 1 of the U.S. Constitution in order to establish federal question jurisdiction.

(Dkt. 1, Pg ID 5).  Plaintiff provided some factual background for her RICO and

ADA claims.  However, she provided very little or no factual development for the

civil rights and constitutional claims.  In the narrative portion of the complaint she

does not mention the amendments to the Constitution at all and the only factual

allegation attributable to her civil rights and constitutional claims is that the

inspector threatened her and violated her civil rights to vote, to be a candidate "the

same as any white person," and her constitutional right to run for president.  The

remaining factual allegations relate to her RICO and ADA claims, addressed

above.  This bare allegation is not sufficient to state a claim for relief.  The

statement that her rights were violated is a conclusion of law and is speculative at

best; for instance, she provides no allegations regarding what action this inspector

took that violated her rights; nor does she allege that she was in fact kept from

voting or running for office.  While the Court must accept factual allegations as

true in evaluating a motion to dismiss, the Court need not accept conclusions of

law as true.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  To survive a motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.*  In this case there is simply no factual content to allow a reasonable inference that defendants are liable for violations of the Civil Rights Acts of 1866 and 1964, or for violations of Article II, Section I of the U.S. Constitution, or the Thirteenth and Fourteenth Amendments thereto.[3]  The undersigned is left to guess at which specific statutory or amendment provisions plaintiff seeks relief, and for what conduct.  "As has been recognized by our circuit and others, despite liberal pleading requirements for *pro se* litigants, it is not the role of the court to guess the nature of the claim(s) asserted." *Agee v. Wells Fargo Bank*, 2010 WL 1981047, *2 (E.D. Mich. 2010) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989; *Nuclear Transportation & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989); *Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir.

---

[3] This is to say nothing of whether plaintiff's claims are permissible.  For example, the Court does not have jurisdiction over any constitutional claims against the USPS itself.  In *FDIC v. Meyer,* 510 U.S. 471 (1994), the court declined to extend *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), to authorize suit against federal agencies.  Further, the Fourteenth Amendment claim against USPS employees is also improper.  The Fourteenth Amendment restricts the activities of the states, and thus there can be no claim for violation against federal employees.  A due process claim against federal employees is more properly brought under the Fifth Amendment.  *Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n. 8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government.").

1986)).  For these reasons, these claims should be dismissed for failure to state a claim.

              d.       Claims against in-laws

It is not clear whether plaintiff attempted to bring criminal claims against her "former in-laws" when she lists a series of crimes they allegedly committed.  It is also unclear whether her in-laws make up part of the 20 unnamed postal employee defendants.  In any event, to the extent plaintiff is attempting to prosecute these claims, she lacks standing to enforce criminal laws or to seek a judicial order compelling initiation of a criminal prosecution.  *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973); *Diamond v. Charles,* 476 U.S. 54, 64 (1986) (holding that a private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Saro v. Brown*, 11 Fed. Appx. 387 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch."); *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 873-74 (S.D. Ohio 2003) ("The law is clear that a private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime.").  Consequently, the claims should be dismissed.

e.     State Law Claims

The Court further recommends that the District Court decline to

exercise supplemental jurisdiction over plaintiff's Michigan Constitution claims.

Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental

jurisdiction over state-law claims if "the district court has dismissed all claims over

which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3). "When all federal

claims are dismissed before trial, the balance of considerations usually will point to

dismissing the state law claims [.]" *Musson Theatrical, Inc. v. Express Corp.,* 89

F.3d 1244, 1254–55 (6th Cir.1996); *see also Wee Care Child Ctr., Inc. v. Lumpkin,*

680 F.3d 841, 849 (6th Cir.2010) ("As [plaintiff's] one federal claim was properly

dismissed, it was likewise proper for the district court to decline to exercise

supplemental jurisdiction over the remaining state law claims."); *Ketola v.*

*Clearwater*, 2008 U.S. Dist. LEXIS 104205, at *13-14, 2008 WL 4820499 (W.D.

Mich. Oct. 31, 2008) ("Where a district court has exercised jurisdiction over a

state-law claim solely by virtue of supplemental jurisdiction and the federal claims

are dismissed prior to trial, the state-law claims should be dismissed without

reaching their merits.").

3.     Motion for Judgment on the Pleadings (Dkt. 12)

To the extent plaintiff's motion for judgment on the pleadings (Dkt. 12)

raises argument beyond defendants' alleged untimely response to the complaint, in

light of the recommendation to dismiss the complaint the undersigned suggests that plaintiff's motion be denied as moot.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss (Dkt. 11) be **GRANTED** and that the complaint be dismissed.

The undersigned further **RECOMMENDS** that plaintiff's motion for judgment on the pleadings (Dkt. 12), motion for summary judgment (Dkt. 13), and motion for default judgment (Dkt. 14) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 31, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 31, 2018, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Cherunda Lynn Fox, P.O. Box 20274, Ferndale, MI 48220-0274.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov